# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MANUEL M. LICHAUCO, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | Case No. 1:17-cv-7289 |
| ) | |
| JOHN F. KELLY, ) | Magistrate Judge M. David Weisman |
| ) | |
| *Defendant.* ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Manuel M. Lichauco filed this employment discrimination suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Defendant Secretary of the Department of Homeland Security, alleging race and national origin discrimination. (Dkt. 1.) The parties consented to proceed before this Court on December 8, 2017. (Dkt. 9.) Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 26.) For the reasons set forth herein, the Court grants Defendant's motion.

## RELEVANT FACTS

As an initial matter, the Court did not consider statements of fact made without reference to the record in violation of Local Rule 56.1 and also disregarded any improper argument or opinion contained in Plaintiff's Response to Defendant's Statement of Material Facts (Dkt. 33) and Plaintiff's Statement of Additional Facts (Dkt. 34). *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir.2005) (a district court may refuse to consider statements of fact not in compliance with Local Rule 56.1); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("When analyzing Local Rule 56.1(b) statements, courts are

not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'"). The Court also deemed admitted any fact that Plaintiff disputed in whole or in part without citing evidence in the record that adequately rebutted the stated fact. *See* Rule 56(c)(1)(A) ("[a] party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record"); *Phillips*, 855 F. Supp. 2d at 772 ("[W[here a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted.").

Plaintiff is an Asian male of Filipino decent.[1] (Dkt. 33 at ¶ 3.) From 2008 until 2015, Plaintiff was employed by the Transportation Security Administration ("TSA") as a Master Coordination Center Officer ("MCCO") at O'Hare Airport. (*Id.* at ¶ 2.) MCCOs are charged with, among other things, collecting information about ongoing incidents at the airport and reporting such information to the TSA leadership. (*Id.* at ¶ 3.) In 2015, Plaintiff was demoted to his original position as a transportation security officer due to his inability to satisfactorily perform the responsibilities of an MCCO. (*Id.* at ¶¶ 3, 5.) Prior to the demotion, the TSA paid for Plaintiff to take both online and in-person classes aimed at improving his written and oral communication skills. (*Id.* at ¶ 6.) The TSA also issued letters of guidance to Plaintiff and placed him on a Performance Improvement Plan ("PIP") implemented to assist Plaintiff with his job performance. (*Id.*) When Plaintiff's work failed to improve, the TSA issued a notice of removal which was later reduced to a demotion. (*Id.* at ¶ 7.)

Plaintiff subsequently filed Equal Employment Opportunity ("EEO") complaints and a federal lawsuit ("*Lichauco I*") against the TSA, alleging that the letters of guidance and PIP were

---

[1] Although Plaintiff's statement of facts alleges he is Asian, his response brief refers to him as Hispanic. (Dkt. 35 at p. 8.) As the undisputed facts trump counsel's argument, the Court finds Plaintiff's self-description as Asian controlling.

pretext for retaliation and discrimination based on Plaintiff's race and national origin, and that the TSA subjected him to a hostile work environment. (*Id.* at ¶ 8.) The Court in *Lichauco I* rejected Plaintiff's claims and granted summary judgment in favor of the TSA. (*Id.* at ¶ 9.) While *Lichauco I* remained pending, Plaintiff had ongoing EEO claims (also related to race/national origin discrimination and a hostile work environment) against the TSA arising from an earlier period of employment as an MCCO. Those claims are the subject of the instant lawsuit.[2] (*Id.* at ¶ 10.)

In July of 2009, an audit of the TSA operations at O'Hare revealed several deficient areas, including the Coordination Center, which was deemed as ineffectively managing security incidents. (*Id.* at ¶¶ 11–12.) As a result of the negative audit, Deputy Federal Security Director Kenneth Fletcher replaced the previous Coordination Center manager with Brian Lucas, who completed a comprehensive review of all personnel assigned to the Coordination Center. (*Id.* at ¶¶ 12–13.) During his review, Lucas received numerous complaints about Plaintiff's ability to communicate effectively over the phone, especially when dealing with fast-paced security incidents. (*Id.* at ¶¶ 14, 16.) Accordingly, in August of 2009, Plaintiff's duties were altered to focus on administrative tasks, but he remained an MCCO at the same salary and grade level. (*Id.* at ¶¶ 11, 19.) Plaintiff claims that his shift to administrative work prompted his co-workers to call him "secretary" and laugh. (*Id.* at ¶ 20.) At the time, Plaintiff took the comment as a joke and did not report the incident to his supervisors.[3] (*Id.*) Additional comments about Plaintiff's administrative duties, viewed in a light most favorable to Plaintiff, form the basis of his claims:

---

[2] Plaintiff makes references to his alleged homosexuality throughout his submissions. (*See, e.g.*, Dkt. 33 at ¶¶ 20, 21, 28.) As Plaintiff has pursued discrimination claims based on his race and national origin rather than sexual orientation, any reference to homosexuality was not considered.

[3] Plaintiff improperly attempts to contradict his prior sworn statement that he took the comment as a joke by claiming in a later-executed affidavit that he perceived the remark as "malicious," "derogatory," and based on his race. (*Id.*) The Court will disregard Plaintiff's attempt to muddy the record. *See, e.g.*, *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.").

3

(1) On August 17, 2009, supervisor Dawn Johnson-Bridges called Plaintiff "secretary" and said he should "wear a skirt," causing Plaintiff's co-workers to laugh (Dkt. 38 at ¶ 2); (2) On August 18, 2009, Johnson-Bridges said "the secretary is back" when Plaintiff returned from a break during work (*id.* at ¶ 3); and (3) Johnson-Bridges again told Plaintiff on August 22, 2009 that he should "wear a skirt" which prompted Lucas to ask whether Plaintiff can do a "lap dance too" (*id.* at ¶ 4).

Meanwhile, supervisors continued to receive numerous complaints about Plaintiff's inability to effectively communicate in English, several of which Plaintiff learned about from his managers. (Dkt. 33 at ¶¶ 24–25.) As a result, Lucas questioned Plaintiff about his English language ability, including whether he processed words in his native language, which Defendant claims Lucas asked to determine what help Plaintiff may have needed to effectively perform his duties. (*Id.* at ¶ 26; Defendant's Statement of Material Facts ("DSMF") Dkt. 28 at ¶ 26.) Lucas' comment prompted Plaintiff to write a letter to the Federal Security Director and other management officials. (Dkt. 38 at ¶ 6.) In response to Plaintiff's letter, the Assistant Federal Security Director Mark Lendvay[4] arranged a meeting with Lucas and Plaintiff where Lucas admitted to having trouble with Plaintiff's accent. (Dkt. 38 at ¶ 7.) Lendvay ultimately concluded that Lucas and Plaintiff could continue to work together and offered Plaintiff the opportunity to meet with him again if further issues arose. (Dkt. 33 at ¶ 28.) Plaintiff did not do so. (*Id.*)

Plaintiff also contends that Lucas said Plaintiff could "fix anything because [Plaintiff] is a mercenary," although Lucas denied making such a statement. (*Id.* at ¶ 23.) While Plaintiff testified at his deposition that he did not take this comment to be based on his race or national origin, he submitted an affidavit stating that he understood mercenary to be a "foreign national origin

---

[4] Plaintiff incorrectly spells Lenvay's name and refers to him as "Acting Federal Security [Director]." (*Id.* at ¶ 7.) Based on Lenvay's deposition testimony, his proper title is Assistant Federal Security Director. (Dkt. 28, Ex. 3 at ¶¶ 14–15.)

4

concept." (*Id.*) As discussed above, Plaintiff cannot create an issue of fact by submitting an affidavit contradicting prior sworn testimony. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996). The Court will therefore only consider Plaintiff's deposition testimony about understanding Lucas' comment to be race- and national origin-neutral.

On September 1, 2009, Johnson-Bridges indicated in a performance evaluation that Plaintiff needed to accept new responsibilities and policy changes with a positive attitude. (Dkt. 38 at ¶ 8.) Plaintiff asked for specific examples, which led Johnson-Bridges to complain to Lucas, who then informed Plaintiff that he was "becoming problem personnel at the Coordination Center." (Dkt. 38 at ¶¶ 8–9.) Thereafter, Plaintiff became interested in a promotional opportunity as an "expert MCCO," but Lucas told Plaintiff he was not qualified and that "[Plaintiff was] consistent with all of [his] inconsistencies on the job." (*Id.* at ¶ 10.) Plaintiff insists he did not get the promotion because of his accent, yet there is no evidence that Plaintiff actually applied for the promotion. (*Id.*)

In April of 2010, Plaintiff answered a call from manager Dale Harris by stating "Manny speaking." (*Id.* at ¶ 11.) Harris responded: "That will be your new name now Manny, Manny speaking . . . . When bullshit walks, Manny walks . . . . That's your new name now, isn't it?" Plaintiff said "no sir," and Harris countered "you call me sir again, I will put your lights out and put a headlock on you." (*Id.* at ¶ 11; Dkt. 33 at ¶ 34.) After Harris learned that the comments upset Plaintiff, Harris assured Plaintiff he was only joking and suggested that they shake hands and forget about the incident. (Dkt. 33 at ¶ 36.) Plaintiff complained about Harris' conduct to Deputy Assistant Federal Security Director Roger Romano, who conducted an investigation into the matter. (*Id.* at ¶ 38.) Romano concluded that Harris did not intend to bully or physically threaten Plaintiff and that his comments were not based on Plaintiff's race or national origin. (*Id.*)

5

As a result of Harris' poor judgment, however, and as a remedial measure, the TSA issued a corrective action to Harris and took steps to minimize Harris' contact with Plaintiff. (*Id.* at ¶ 39.) Romano also told Plaintiff to contact him immediately if any further issues arose and assured Plaintiff that his complaints would be addressed immediately. (*Id.*)

The parties dispute the details surrounding Plaintiff's request for leave in April of 2010. Defendant insists that Johnson-Bridges denied Plaintiff's request for a day off because Johnson-Bridges was unable to find a replacement with only three-days' notice. (DSMF at ¶ 40.) While Plaintiff counters that he only requested one-hour leave to take a final exam at college, Plaintiff's deposition testimony is internally inconsistent and references both an hour request and full-day request. (Dkt. 28, Ex. 5 at p. 5:104–107 ("I was requesting the day off for my final exam.") and p. 5:109–10 ("I was just asking for one hour.").) The parties also dispute whether Lesley Kure mocked Plaintiff when he overheard Plaintiff and a co-worker talking Tagalog. (Dkt. 38 at ¶ 13.) Although Plaintiff insists that Kure was a supervisor, the record demonstrates that Kure held the same position as Plaintiff at the time of the alleged incident. (Dkt. 33 at ¶ 42; Dkt. 38 at ¶ 13.) Whether or not the incident happened, the parties agree that Plaintiff did not report the matter to management. (Dkt. 33 at ¶ 42.)

Four months later in August of 2010, Plaintiff was issued a non-disciplinary letter of guidance because he failed to obey a direct command from his supervisor to stop questioning another employee about his medical condition. (*Id.* at ¶ 43.) In November of 2010, Plaintiff was issued another non-disciplinary letter of counseling because he answered a personal call while on duty in violation of TSA's cell phone usage policy. (*Id.* at ¶ 44.) When reminded about the policy by the on-duty supervisor, Plaintiff became argumentative. (*Id.* at ¶ 45.) The following month, Plaintiff complained to Lucas about supervisor Christine Kuznieski, who allegedly assumed that

Plaintiff would be offended by Christmas decorations. (*Id.* at ¶ 46.) In response, Lucas held a meeting with Kuznieski and counseled her to be more professional in the workplace. (*Id.* at ¶ 47.)

In July of 2017, the Department of Homeland Security's Office for Civil Rights and Civil Liberties issued a final agency decision finding that Plaintiff had failed to prove that any of the cited actions (above) were taken against him because of his race or national origin. (*Id.* at ¶ 48.) Plaintiff subsequently filed suit in the District Court. (*Id.*)

## LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute as to a material fact exists if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017). To show a genuine dispute as to a material fact, the non-moving party must offer "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). Courts must view all evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017); *see also Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) ("The party opposing summary judgment receives the benefit of reasonable inferences."). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). To defeat a motion for summary judgment, "'a party must present more than mere speculation or conjecture.'" *Borcky v. Maytag Corp.*, 248 F.3d 691, 697 (7th Cir. 2001).

## ANALYSIS

### I. Race and National Origin Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably." *Moultrie v. Penn Aluminum Int'l*, 766 F.3d 747, 752–53 (7th Cir. 2014). Under the *McDonnell Douglas* burden-shifting analysis, if the plaintiff satisfies this burden, the defendant "has an opportunity to identify a legitimate, nondiscriminatory reason for its actions," in which case the burden would then shift back to the plaintiff "to demonstrate that the given reason was pretextual." *Moultrie*, 766 F.3d at 753.[5]

Here, Plaintiff has failed to establish a prima facie case of discrimination because he cannot satisfy the second and fourth elements of his claim.

**(A)** *Employer's Legitimate Job Expectations*

It is undisputed that due to the critical role the O'Hare Coordination Center plays in incident communications, MCCOs must be concise and clear when they convey information. (Dkt. 33 at ¶ 4.) An unflattering audit of the Coordination Center amplified the need to ensure all MCCOs were communicating effectively in order to improve the Center's overall performance. (*Id.* at ¶¶ 11–12.) During this heightened focus on efficient communication, supervisors received numerous complaints about Plaintiff's inability to effectively communicate in English. (*Id.* at ¶ 24); (Dkt. 28, Ex. 8 at p.1 (noting that Plaintiff was "very difficult to understand" on the phone

---

[5] The Seventh Circuit recently confirmed that its ruling in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) did not dislodge the *McDonnell Douglas* framework. *Golla v. Office of the Chief Judge of Cook Cty., Ill.*, 875 F.3d 404, 407 (7th Cir. 2017). Instead, *Ortiz* clarified the applicable legal standard – "'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action.'" *Id.* (citing *Ortiz*, 834 F.3d at 765). Beyond that, *Ortiz* has no impact on the instant opinion at this juncture.

and that due to Plaintiff's "inability to speak clearly," medical attention was unable to reach a checkpoint quickly)); (*id.* at p. 3 (indicating that a Transportation Security Manager "had to repeat information several times and often had to ask several times for [Plaintiff] to repeat information back to him")); (*id.* at p. 4 (complaining that Plaintiff is "very hard to understand" which led to a "a lot of time being wasted")); (*id.* at p. 6 (noting that Plaintiff had "difficulty processing the conversation")); (*id.* at p. 7 (stating Plaintiff had "an extremely difficult time understanding" the caller which resulted in a call that should have taken one minute last for much longer)). Several of the complaints specifically addressed Plaintiff's struggles when dealing with fast-paced security incidents. (Dkt. 33 at ¶¶ 14, 16.) Although Plaintiff received a generally positive performance evaluation in September of 2009, supervisor Johnson-Bridges noted in Plaintiff's evaluation that he needed to accept new responsibilities and policy changes with a positive attitude. (Dkt. 38 at ¶ 8.) Another supervisor, Brian Lucas, informed Plaintiff in December of 2009 that he was inconsistent in his job performance. (*Id.* at ¶ 10.)

In sum, the record is replete with examples of Plaintiff's performance shortcomings and adverse impact on the Coordination Center's information-sharing responsibilities. Whether Defendant properly focused on Plaintiff's communication abilities is not for the Court to decide - "[a] federal court does not sit as a 'super-personnel department,' second-guessing an employer's legitimate concerns about an employee's performance." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680 (7th Cir. 2015). Plaintiff has failed to submit *any* evidence that his communication was effective, let alone enough evidence to raise a genuine issue of fact as to whether he met Defendant's legitimate performance expectations.[6]

---

[6] The Court also notes that Plaintiff relies on facts arising from *Lichauco I* which fall beyond the scope of this lawsuit, including issues related to the PIP he received. (Dkt. 35 at pp. 8–9.) The Court in *Lichauco I* has already addressed these issues in detail and they will not be re-examined here. (Dkt. 28, Ex. 1 at pp. 16–18.)

**(B)** *Similarly Situated Employees Outside of Plaintiff's Protected Class*

Although Plaintiff's failure to establish that he satisfied Defendant's legitimate job expectations dooms his prima facie claim of discrimination, the Court will also briefly address Plaintiff's lack of evidence regarding Defendant's treatment of similarly situated employees outside of his protected class. When offering another employee as similarly situated, "'a plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects.'" *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 492 (7th Cir. 2014). While Plaintiff testified to approximately twenty employees who treated him poorly (Dkt. 38 at ¶ 17), he only identified three employees who were allegedly treated more favorably than him: Devon Dejesus, Maria Morelli, and Paul Rowland (*id.* at ¶ 18). When asked in what ways Ms. Dejesus received more favorable treatment, Plaintiff merely answered "[b]ecause she is a female and Mr. Lucas liked females." (Dkt. 34, Ex. 7 at p. 41:24–42:3.) In response to the same question about Maria Morelli, Plaintiff stated that she was the "right-hand person of Mr. Lucas" and could yell at Lucas "without any response." (*Id.* at p. 42:4–12.) Lastly, with respect to Mr. Rowland, Plaintiff testified that Mr. Rowland's father had a connection to a police department that resonated with Lucas. (*Id.* at p. 42:13–18.)

This testimony falls woefully short of establishing more favorable treatment of employees outside of his protected class. First, Plaintiff provides no evidence that any of these individuals were in fact outside of his protected class and the Court will not speculate as to their race and national origin. While he notes that Ms. Dejesus is a female, Plaintiff's claims are not based on gender discrimination. Moreover, Plaintiff has not directed the Court to any evidence about the job titles and responsibilities of these individuals, their job performance, or whether any of them, like Plaintiff, received complaints about their communication skills. *See, e.g.*, *Humphries v.*

*CBOCS West, Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007) (similarly situated requirement "'normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'"); *Evans v. Cty. of Cook*, No. 14-cv-7402, 2016 WL 2619713, at *4 (N.D. Ill. Feb. 18, 2016) (granting summary judgment when plaintiff provided "absolutely no argument or evidence that he was treated worse than similarly situated employees outside his protected class"); *Holman v. Nicholson*, No. 07 CV 4518, 2009 WL 77528, at *6 (N.D. Ill. Jan. 9, 2009) (granting summary judgment when plaintiff introduced "no evidence that [the comparator] held the same position as Plaintiff, was required to perform the same duties as Plaintiff, and performed those duties at the same level as Plaintiff").

Indeed, Plaintiff has provided little more than the names of three individuals who allegedly have a strong relationship with Lucas. This is simply not enough. Without evidence of a comparably situated employee outside of his protected class who had documented issues with communication, Plaintiff fails to establish this element as well.

**(C)** *Burden-Shifting and Pretext*

As Plaintiff has not satisfied his prima facie case, an argument about pretext does not even arise. *See, e.g.*, *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1011 (7th Cir. 2000) (if plaintiff fails to make a prima facie case of discrimination, the Court need not address pretext).

**II. Hostile Work Environment**

Title VII prohibits employers from allowing a hostile work environment based on an employee's "inclusion in a protected class, such as race, gender, or national origin." *Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 846 (N.D. Ill. 2002). To state a claim under Title VII

on the basis of a hostile work environment, a plaintiff must establish that: "'(1) he was subject to unwelcome harassment; (2) the harassment was based on his race [or sex]; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016).

**(A)** *Plaintiff Was Subject to Unwelcome Harassment*

Construing the facts in a light most favorable to Plaintiff, the Court finds that the first prong of the analysis has been satisfied. The common understanding of "harass" is "to create an unpleasant or hostile situation."[7] Comments made about Plaintiff's role as a "secretary" or that he should wear a skirt and perform a lap dance, coupled with Harris' comment that he would put Plaintiff's "lights out" are enough to presume that Plaintiff experienced subjectively unpleasant and uncomfortable situations. (*See, e.g.*, Dkt. 38 at ¶¶ 2, 4, 11.)

**(B)** *Plaintiff Has Not Adequately Alleged That the Harassment Was Based on His Race or National Origin*

Plaintiff is unable, however, to establish any of the remaining elements of the analysis. First, Plaintiff has not demonstrated that the harassment was based on his race or national origin. Although the connection "need not be explicit, 'there must be some connection, for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority.'" *Cole*, 838 F.3d at 896; *see also Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) ("'[A]lleged harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race.'").

---

[7] *See* Merriam-Webster's Dictionary.

Plaintiff has not introduced sufficient evidence to show that Defendant acted in a particular way towards Plaintiff because of his race or national origin. Indeed, Plaintiff admits that he did not understand the comments about him as a "secretary" to be motivated by his protected status. (Dkt. 33 at ¶ 20.) And the remarks about Plaintiff wearing a skirt and performing a lap dance cannot reasonably be connected to his race or national origin. (Dkt. 38 at ¶¶ 2, 4.) While Harris' comments – "[w]hen bullshit walks, Manny walks" and that he would put Plaintiff in a "headlock" – are objectively offensive, Plaintiff has not established that they were linked to his race or national origin. (Dkt. 38 at ¶ 11; Dkt. 33 at ¶ 34.) The incidents that are arguably closest to having racial undertones still fall far short of establishing a connection (save for one lone comment that will be addressed below). First, Lucas' question to Plaintiff about whether he processed words in his native language was made after supervisors received numerous complaints about Plaintiff's inability to effectively communicate in English. The Court finds that the comment is neutral on its face and, contrary to Plaintiff's argument, cannot support a discriminatory animus. (Dkt. 33 at ¶¶ 24–26.) Next, even if the Court assumes that Lucas made a comment that Plaintiff could "fix anything because [Plaintiff] is a mercenary," (which Lucas denies), Plaintiff himself testified – and then later attempts to contradict in his affidavit – that he did not understand this remark to be based on his race or national origin. (Dkt. 33 at ¶ 23.) Finally, although Plaintiff attempts to cloak the disputed remark by Kuznieski that Plaintiff may have been offended by Christmas decorations in racial discrimination, the comment, if anything, implicates religion, not race or national origin. (*Id.* at ¶ 46.) Plaintiff supports the view that, at worse, the comment implicates a religious bias with the following assertion: "By mentioning Lichauco's name with a Muslim co-worker of course

13

he would get offended . . . ." *Id.* Thus, Plaintiff concedes that in his own mind the comment, if anything, was related to religion.[8]

The only remark that may *potentially* show evidence of discriminatory animus was purportedly made by Lesley Kure when he mocked Plaintiff and a co-worker speaking Tagalog. (Dkt. 38 at ¶ 13.) An isolated comment or "'stray remark,'" however, "is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action.'" *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). The Court need not move beyond the first factor – that Kure was a co-worker rather than a supervisor/decision-maker dooms Plaintiff's claim. (Dkt. 28, Ex. 14 at p.1:12-17; Dkt. 38, Ex. 26 at ¶ 3 (establishing that at the time of the alleged comment, Kure held the same position as Plaintiff).)

The remainder of the primary incidents at issue (Plaintiff's unsuccessful request for leave in April of 2010 and Plaintiff's receipt of non-disciplinary letters of guidance based on failure to obey a supervisor and cell phone violations) also lack a sufficient connection. (Dkt. 33 at ¶¶ 43–44; Dkt. 38 at ¶ 12.) No reasonable jury could conclude that these actions were motivated by Plaintiff's race or national origin. Accordingly, as Plaintiff has not established the second element of the analysis, his Title VII claim has no merit.

**(C)** ***The Harassment Was Not Severe or Pervasive***

Although Plaintiff's failure to meet the second prong of the analysis is sufficient to grant Defendants' motion for summary judgment, the Court notes that Plaintiff's argument fails as to

---

[8] The Court finds it necessary to remark on the hypocrisy of Plaintiff's response. To reiterate, Plaintiff was offended by Kuznieski's comment because "[b]y mentioning Lichauco's name with a Muslim co-worker *of course he would get offended, to* [Plaintiff] *it is a malicious comment* . . . ." (Dkt. 33 at ¶ 46.) Plaintiff therefore makes clear that he is offended by Kuznieski associating Plaintiff with a Muslim co-worker. The absurdity of this reaction calls into question whether Plaintiff could legally argue that he was subjectively offended by Kuznieski's comment – Plaintiff is essentially asserting that he took offense to this comment because of his own inappropriate bias and prejudice towards Muslims.

the remaining elements as well. Plaintiff has not shown that the harassment was "severe or pervasive," as is required to state a claim under Title VII. In evaluating a hostile work environment claim, a court must consider whether the alleged conduct was "both objectively and subjectively offensive." *Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 846 (N.D. Ill. 2002). Whether a work environment is hostile depends on "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001). In assessing whether this standard has been met, the Court considers the evidence in its totality and not each instance in isolation. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1044–45 (7th Cir. 2000) ("[U]nder the Supreme Court's totality of circumstances approach, all instances of harassment by all parties are relevant to proving that [plaintiff's] environment is sufficiently severe or pervasive."). While the Seventh Circuit has clarified that the workplace need not be "'hellish'" to be actionable, "a hostile work environment must be 'so pervaded by discrimination that the terms and conditions of employment are altered.'" *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). Importantly, Title VII does not "guarantee a perfect work environment," and therefore "not all workplace unpleasantries give rise to liability." *Aguilera*, 234 F. Supp. 2d at 846; *see also Alamo*, 864 F.3d at 550 ("Title VII was not designed to become a 'general civility code.'").

While the Court has no reason to doubt that the incidents complained of may have been subjectively offensive to Plaintiff, objectively they are not enough to demonstrate a hostile work environment. Plaintiff offers only a relatively short list of conduct over a period of 16 months to support his claim which does not rise to the level of an objectively hostile work environment. *Compare Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (describing an

15

"appalling litany of misconduct" that included pervasive vile epithets and graffiti aimed at the plaintiff, as well as references to the KKK and "White Power" and finding that plaintiff had established a claim under Title VII). As discussed above, while some of the cited comments were unprofessional, conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018).

**(D)** *Plaintiff Has Not Established a Basis for Employer Liability*

Finally, Plaintiff has not established that there is a basis for employer liability. Employers are strictly liable if a supervisor engaged in the discriminatory behavior. If, on the other hand, co-workers inflicted the harassment, plaintiff must show that the employer has been "'negligent either in discovering or remedying the harassment.'" *Williams v. Waste Mgmt. of Ill. Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004). In other words, the employer "'can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.*

Here, the only objectively problematic comment that could be tied to race/national origin was made by Lesley Kure when he allegedly mocked Plaintiff and a co-worker speaking Tagalog. (Dkt. 38 at ¶ 13.) Kure, however, held the same MCCO position as Plaintiff at the time of the incident. (Dkt. 28, Ex. 14 at p.1:12–17; Dkt. 38, Ex. 26 at ¶ 3.) Strict liability for Defendant is therefore not possible. Plaintiff has also failed to prove that Defendant was negligent in taking corrective action. With respect to Kure's comment, the undisputed facts establish Plaintiff did not inform management about the incident. (Dkt. 33 at ¶ 42.). *See Bernier v. Morningstar, Inc.*, 495 F.3d 369, 373 (7th Cir. 2007) (Where plaintiff attempts to hold the employer liable for the actions of a co-worker, "'the plaintiff bears the burden of showing that the employer knew of the problem

. . . and that the employer did not act reasonably to equalize working conditions *once it had knowledge.*'") (emphasis added).

The record makes clear that Defendant acted swiftly and professionally in reaction to each of Plaintiff's reported complaints. First, in response to Plaintiff's complaint about Lucas' question concerning how Plaintiff processed language, Mark Lendvay promptly arranged a meeting between Plaintiff and Lucas and offered to meet with Plaintiff again if further issues arose. (Dkt. 33 at ¶ 28; Dkt. 38 at ¶ 7.) Next, following the incident involving Dale Harris' "headlock" comment, Federal Security Director Roger Romano conducted an investigation and the TSA issued a corrective action to Harris and minimized Plaintiff's contact with Harris. (Dkt. 33 at ¶¶ 38–39.) Finally, Lucas counseled Kuznieski to be more professional following the incident involving Christmas decorations. (*Id.* at ¶ 47.) All of these remedial actions indicate that Defendant exercised reasonable care to prevent and correct inappropriate conduct.

## Conclusion

For the reasons set forth above, the Court grants Defendant's motion for summary judgment [26] and terminates this case.

**SO ORDERED.**  ENTERED: April 9, 2019

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**